288 F.3d 472
 UNITED STATES of America, Appellee,
v.
Rafael GUTIERREZ RODRIGUEZ, Johnnie Muriel, Tylon Mims, Xavier Quinonez, Jose Quinonez, Benjamin Cook, Angel Mantilla, Jose Albino, Felix Rios, Shawn Abrams, Carmelo Santiago, and Hector Garcia, Defendants,
Donald Mims, Defendant-Appellant.
 No. 00-1345.
 United States Court of Appeals, Second Circuit.
 Argued: January 11, 2001.
 Decided: April 26, 2002.
 
 Richard R. Brown, Brown, Paindiris & Scott, LLP, Hartford, CT, for Defendant Appellant.
 Michael J. Gustafson, Assistant United States Attorney, Hartford, CT, (Stephen C. Robinson, United States Attorney, of counsel), for Appellee.
 Before VAN GRAAFEILAND, WINTER, and CALABRESI, Circuit Judges.
 WINTER, Circuit Judge.
 
 
 1
 Donald Mims appeals from his conviction after a plea of guilty before Judge Droney to one count of conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 841(a)(1), 846. Appellant contends that his conviction should be vacated because, when he entered his plea, he was not correctly informed about the law pertinent to the charges against him. In particular, he argues that, in light of the Supreme Court's subsequent decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the district court erred in telling him that the government had to prove his involvement with only a "detectable" quantity of heroin to obtain a conviction by a jury and expose him to a maximum sentence of life imprisonment. We hold that, although the district court's statement was inaccurate under Apprendi, the mistake was not such as to call for reversal on plain error review. We therefore affirm.
 
 BACKGROUND
 
 2
 Appellant participated in a gang called "Sweety Ville" that conducted a drug distribution business in "The Sands" housing complex in Hartford, Connecticut. The gang obtained heroin from New York City, and a dozen or more members of the gang, including appellant, sold heroin around the clock, seven days a week for at least several months. Although the record is unclear as to how long the drug trafficking went on, there was police video surveillance of it for over four months. Undercover police engaged in and recorded one or more drug transactions with each gang member. In appellant's case, the police bought three bags of heroin from him for thirty dollars.
 
 
 3
 Based on evidence collected by the police in their investigation, appellant and the other members of the gang were arrested and charged with engaging in a drug conspiracy under 21 U.S.C. §§ 841(a)(1), 846. Appellant was also charged with one count of drug distribution, violating 21 U.S.C. § 841(a)(1), for his sale of heroin to an undercover officer. Appellant agreed to plead guilty to the conspiracy count in exchange for the government dropping the distribution count. He stipulated in the plea agreement that the drug conspiracy involved the distribution of between one and three kilograms of heroin. The government agreed to recommend a reduction in his Guidelines sentence level, pursuant to U.S.S.G. § 3E1.1, for his acceptance of responsibility.
 
 
 4
 When appellant appeared to enter his guilty plea, the district court engaged in a lengthy colloquy to ensure that appellant was informed of what he was doing. Appellant was told that by pleading guilty, he was waiving his right to compel the government to prove the crime at a trial. The district court questioned appellant to confirm that he understood the charges against him. In particular, the court told appellant that he could be convicted on the conspiracy count even if the jury found that only a "detectable" amount of heroin was involved.
 
 
 5
 The district court also informed appellant of the consequences of his plea, including those pertaining to sentencing. Appellant was specifically warned that a life sentence might be imposed for a conviction on the conspiracy count. This statement was based on the statute's sliding scale of maximum sentences according to the quantity of drugs involved[1] and appellant's stipulation that the conspiracy distributed over one kilogram of heroin.
 
 
 6
 Appellant did not dispute the government's description of the drug conspiracy and the amount of heroin properly attributed to the gang's activities. Although he made it clear that he did not personally sell one to three kilograms of heroin, he conceded that, for purposes of sentencing, he was, as a member of the conspiracy, responsible for that amount. At the sentencing hearing, the district court inquired whether appellant still agreed that the conspiracy involved over one kilogram of heroin. He replied that he did, although again stating that he did not personally sell that much.
 
 
 7
 Apart from the court's statement that a conviction would follow from a jury's finding that a "detectable" amount of heroin was involved in the conspiracy, the plea colloquy did not otherwise address the relative role of court and jury and the burdens of proof with regard to issues arising from the quantity of drugs distributed by the gang. This omission was understandable because of appellant's stipulation as to quantity in the plea agreement. However, his counsel assured the court that all pertinent issues had been explained to appellant, and we may accordingly assume that the mix of information available to appellant from the court and his counsel was as follows: (i) the issues to be resolved by the jury required proof beyond a reasonable doubt of the existence of the conspiracy, appellant's participation in it, and the involvement of a "detectable" quantity of heroin; (ii) if the jury convicted, the court would then determine the quantity of heroin involved using the preponderance of evidence standard; (iii) if the quantity so found exceeded one kilogram, the maximum sentence would be life imprisonment; see supra Note 1; and (iv) the finding as to quantity would also be a major factor in determining the appropriate Guidelines sentencing range.
 
 
 8
 At sentencing, appellant sought a two-level reduction as a minor participant in the conspiracy and a downward departure from the Guidelines sentencing range. Both requests were denied. Given appellant's criminal history and offense category under the Sentencing Guidelines, the district court determined a range of 155 to 188 months of incarceration. The district court then sentenced him to 165 months.
 
 DISCUSSION
 
 9
 Appellant contends that, under Apprendi, the district court misinformed him. In Apprendi, the Supreme Court struck down a New Jersey law authorizing a court to enhance a defendant's sentence if it found by a preponderance of the evidence that the crime was motivated by animus against race, color, gender, handicap, religion, sexual orientation, or ethnicity. 530 U.S. at 469, 120 S.Ct. 2348. Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348. Subsequently, in United States v. Thomas, 274 F.3d 655 (2d Cir.2001) (en banc), we extended Apprendi to sentences imposed under 21 U.S.C. § 841. "[B]ecause the quantity of drugs involved in a crime may raise a defendant's sentence above the statutory maximum ... quantity is an element of the offense charged under 21 U.S.C. § 841" and must be charged and properly proved to a jury if it were to affect a defendant's sentence. Id. at 663.
 
 
 10
 Under Thomas, therefore, the mix of information afforded appellant was flawed because it did not accurately inform him about "the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law ... and the maximum possible penalty provided by law." Fed.R.Crim.P. 11(c)(1). Appellant was informed that he would be exposed to a life sentence if the jury convicted him upon proof beyond a reasonable doubt of the conspiracy's distribution of only a "detectable" quantity of heroin and if the court found by a preponderance of the evidence that more than one kilogram was involved. Under Thomas, however, the government would have to prove to the jury beyond a reasonable doubt a quantity in excess of one kilogram to trigger the maximum sentence of life imprisonment, although the court would still determine the precise quantity based on a preponderance of the evidence to calculate the proper Guidelines sentencing range.[2] Of course, because no one anticipated the Apprendi decision, there was no objection either to the information given appellant regarding these issues or the court's acceptance of his plea. Under such circumstances, we review the district court's acceptance of the plea only for plain error. See United States v. Barnes, 244 F.3d 331, 333 (2d Cir.2001) (per curiam); see also Thomas, 274 F.3d at 666-67 (applying only plain error review to Apprendi issues when they were not raised in the district court prior to that decision).
 
 
 11
 Such an error must not only be plain, but it must also affect the substantial rights of the defendant. See United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); Johnson v. United States, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). However, even if an error of such dimensions is found, an appellate court may reverse only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732, 113 S.Ct. 1770 (internal citation omitted); see also Johnson, 520 U.S. at 467, 117 S.Ct. 1544.
 
 
 12
 Thomas held that a district court's instruction to the jury as to the government's burden of proof regarding drug quantity constituted plain error and affected the defendant's substantial rights. 274 F.3d at 667-71. Thus, the question is whether the similar error in the present matter seriously affected "the fairness or the integrity or the public reputation of judicial proceedings." Id. at 671 (emphasis in original). We think that it did not.
 
 
 13
 Thomas held that the plain error there impaired the fairness of the trial precisely because the defendant "did not stipulate or allocute to the drug quantity used to enhance his sentence." Id. "To the contrary, by objecting to the District Court's use of the preponderance-of-the-evidence standard in determining quantity, [the defendant] squarely placed drug quantity at issue." Id. Thomas also contrasted the facts there to a situation where drug quantity is "essentially uncontroverted." Id.
 
 
 14
 In appellant's case, the drug quantity was "essentially uncontroverted." Appellant stipulated in his plea agreement that the conspiracy involved "at least" one kilogram of heroin and twice confirmed to the district court that this drug quantity was accurate. At no time did appellant give any indication that he believed the stated drug quantity to be incorrect or that he wished to contest the amount. Quite the contrary, he maintained only that he did not personally distribute one to three kilograms of heroin, a fact that does not alter his responsibility for the overall activities of the conspiracy. Moreover, the government's factual proffer at the plea hearing amply supported the truth of the stipulation.
 
 
 15
 We see no unfairness to a defendant or threat to the integrity or reputation of judicial proceedings in declining to reverse for plain error a court's misstatement in a plea proceeding as to the location and weight of the burden of proof on a factual issue where the defendant, as part of the proceeding, admits to the truth of the pertinent facts, and the record as a whole casts no doubt on the accuracy of that admission. We recognize that accurate information regarding the burden of proof and the proper trier of fact as to quantity issues pertinent to the maximum sentence would have altered the mix of information given to appellant before making his plea. The alteration would have been slight, however. First, appellant was properly informed as to the burden of proof and right to a jury trial on issues relating to the existence of the conspiracy and his participation in it. He pleaded guilty to the conspiracy charge after a factual proffer by the government that, given the nature of the conspiracy's operations and time of existence, supported, at least on the low end, the one to three kilogram stipulation. Second, notwithstanding Apprendi, the prime determinant of appellant's sentence, the appropriate Guidelines range, would, even had he gone to trial, still be governed by the district court's findings as to quantity based on a preponderance of the evidence. See United States v. Norris, 281 F.3d 357, 360 (2d Cir.2002) (Apprendi does not apply to the Guidelines enhancements determining a sentence that is within the applicable statutory range). We note in that regard that the sentence received by appellant was less than the lowest maximum sentence provided by the statute.
 
 
 16
 Moreover, the ultimate goal of trials, whether civil or criminal, is the ascertaining of the truth. Where, as here, the defendant has formally and voluntarily avowed a fact as true in proceedings that assure the accuracy of the admission, a reversal for plain error in a misstatement regarding the burden of proof as to that fact is not necessary to achieve fairness for the defendant or to protect the integrity or reputation of judicial proceedings. Each of these goals has in fact been fully served.[3]
 
 
 17
 We do not, of course, suggest anything as to the proper outcome in circumstances where a defendant's admission of a fact is less unequivocal, the record otherwise casts doubt on the accuracy of the admission, or an Alford plea — not admitting more than that the government has sufficient evidence to convict — is involved. See North Carolina v. Alford, 400 U.S. 25, 37-38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
 
 
 18
 We therefore affirm.
 
 
 
 Notes:
 
 
 [1]
 At the time of appellant's sentencing, 21 U.S.C. § 841 provided for the following penalties based on drug quantity:
 (I) a minimum term of 120 months (or 240 months for prior drug felons) and a maximum of life for drug trafficking offenses involving at least one kilogram of heroin; (ii) a minimum term of 60 months (or 120 months for prior drug felons) and a maximum of 480 months (or life for prior drug felons) for drug trafficking offenses involving at least 100 grams of heroin; and (iii) no minimum sentence and a maximum of 240 months (or 360 months for prior drug felons) for drug trafficking offenses involving an indeterminate quantity of heroin.
 
 
 [2]
 We hasten to add that the error here resulted through no fault of the district courtApprendi was not decided until June 26, 2000, after appellant had been sentenced. Nevertheless, because Apprendi was decided while appellant's appeal was pending, its teachings apply. See Cuoco v. United States, 208 F.3d 27, 30 (2d Cir.2000); United States v. Jackson, 196 F.3d 383, 384 (2d Cir.1999). "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
 
 
 [3]
 The rationale that we adopt here puts us somewhat at odds with the Eleventh Circuit's reasoning inUnited States v. Sanchez, 269 F.3d 1250 (11th Cir.2001) (en banc). In that case, the Eleventh Circuit relied upon Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), to affirm convictions in cases similar to the present one. See Sanchez, 269 F.3d at 1283. Brady held that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." 397 U.S. at 757, 90 S.Ct. 1463. Put another way, there is "no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that ... the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions." Id.
 We think that the Eleventh Circuit's reliance on Brady was misplaced. Because the defendants in Sanchez, like appellant, challenged the validity of their guilty pleas on direct appeal, 269 F.3d at 1257, Apprendi provided the standards applicable to their appeal. See Griffith, 479 U.S. at 328. In contrast, Brady applies only to collateral attacks seeking to withdraw guilty pleas where the convictions had become final before the change in the law had occurred. Any other view of Brady would necessarily put it in direct conflict with Griffith.